# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**CINDY WARNICK**                                                                                  **PLAINTIFF**

**VS.**                                         **NO. 3:14CV00065 JTR**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration**                                                         **DEFENDANT**

## MEMORANDUM AND ORDER

Plaintiff, Cindy Warnick, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Disability Insurance benefits (DIB) and Supplemental Security Income (SSI). She alleges that the Administrative Law Judge (ALJ) erred: (1) in determining her residual functional capacity (RFC); (2) in assessing her credibility; and (3) in assessing her mental limitations. The Court will address each of those arguments separately in determining if there is substantial evidence in the record to support the ALJ's decision that Plaintiff was not disabled during the relevant time period from December 21, 2009, through March 20, 2013. 42 U.S.C. § 405(g).

**The ALJ's Determination of Plaintiff's RFC:** A claimant's RFC is not required to mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC. Instead,

it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In this case, the ALJ indicated he considered the objective medical evidence and the opinion evidence in finding that Plaintiff has the RFC to perform light work, so long as it is unskilled, with interpersonal contact incidental to the work performed, and with simple, direct, and concrete supervision.[1] (Tr. 17.)

*Medical care received prior to the onset date:* Much of Plaintiff's medical care was provided *prior to* the onset date of December 21, 2009. Treating physician Dr. Hurst saw her in March, June, August, and November of 2009, treating her for back pain and depression. (Tr. 240-55.) During this period, Dr. Hurst limited her on occasion ("no work until Monday" in March, "encouraged not to do any lifting" in June, and she was "told to be careful doing heavy lifting" in August). (Tr. 241, 247, 251.)

In July of 2009, Plaintiff was seen by Dr. Lack for low back pain and swelling. Diagnosing a lumbar strain, Dr. Lack released her to work with restrictions against heavy manual labor, stooping, crawling, bending, and no lifting, pushing or pulling

---

[1] In considering the objective medical evidence, it is important to note that, in this case, the relevant time period for disability purposes if from December 21, 2009, through March 20, 2013.

of more than five pounds. Dr. Lack found she needed to alternate between sitting and standing during the work day, and prescribed physical therapy. (Tr. 216-23.) Plaintiff saw Dr. Lack five times, within a one month period ending August 18, 2009. He then released her to return to work with no restrictions.[2] (Tr. 237-39, 300.)

Treating physician Dr. Hurst referred Plaintiff to a rheumatologist, Dr. Roberts, and to a neurologist, Dr. Cauli. Dr. Cauli, in turn, referred her to Dr. Gera, a pain specialist. Plaintiff told Dr. Hurst that she saw a chiropractor for three months prior to November of 2009, without success. (Tr. 253.) In September of 2009, Dr. Roberts diagnosed back and left hip pain and bursitis, and administered an injection of Decadron and Xylocaine. (Tr. 437-38.) In November of 2009, Dr. Cauli diagnosed mild left sciatic neuropathy and idiopathic left motor neuropathy. He prescribed Zanaflex and Neurontin, and indicated "I will keep her off work for the time being." He directed her to return to see him in one month. (Tr. 335-37.) Dr. Gera saw Plaintiff on December 9, 2009, diagnosed a variety of back and hip problems, and directed her to avoid bending and twisting movements. (Tr. 317-20.) Plaintiff returned to Dr. Cauli, on December 15, 2009, and reported "no significant improvement" with Dr. Gera. (Tr. 338.) Dr. Cauli made minor changes in her medication, and planned to see

---

[2]Dr. Lack administered a test to evaluate Plaintiff's ability to lift, and found she had the lifting capacity consistent with 30 pounds occasionally and 15 pounds frequently. (Tr. 300.)

her again in three months. (Tr. 339.)

*Medical care received after the onset date and during the relevant time period for disability purposes:* On April 28, 2010, Plaintiff was treated for facial numbness at NEA Baptist Memorial Hospital. (Tr. 418-29.) On July 28, 2011, she was seen, as a new patient, at AR Care, where she indicated she had not been on any medication for over a year. She was diagnosed with depression and anxiety, and treated with Prozac and hydroxyzine. (Tr. 344-45.)

A consultative mental examination was conducted by licensed psychologist Hope M. Gilchrist on October 3, 2011. Dr. Gilchrist diagnosed social anxiety and depressive disorder NOS (not otherwise specified), and assessed her GAF at 48, with a high GAF of 52 in the preceding year. (Tr. 347-51.)

A consultative physical examination followed later in October of 2011, with examiner Dr. Banaji diagnosing sciatic neuropathy, chronic bronchitis, and anxiety with depression. Dr. Banaji found Plaintiff had "mild to moderate limitations." (Tr. 357.)

In February of 2012, Plaintiff returned to treating physician Dr. Hunt with congestion and depression with anxiety. (Tr. 410-12.) Three months later, she was treated for abdominal pain at the emergency room of St. Bernard's Medical Center. (Tr. 400-04.) About four months later, she returned to Dr. Hunt, citing depression and

indicating she had been out of medication (Prozac) for several months. (Tr. 408.) She saw Dr. Hunt again two months later, and the diagnosis was numbness in her back, and depression, with anxiety. (Tr. 431.)

In February of 2013, Dr. Andrew Wilkins, a neurologist, conducted a consultative examination, finding Plaintiff "mildly impaired" due to her SI joint dysfunction. (Tr. 442.)

The medical evidence may be summarized as follows: Plaintiff was treated frequently in the months prior to her onset date, with more than one treating physician imposing temporary restrictions on her work activities; no physician has placed permanent restrictions on her work activities; she was treated less frequently after the onset date; and the consultative examiners have found mild, or mild to moderate (Dr. Banaji), impairments.

Given the medical evidence and the ALJ's consideration of the various opinions, substantial evidence supports the RFC assessment. The ALJ gave Dr. Banaji's opinion that Plaintiff has mild to moderate limitations "some weight" but was correct in noting that Dr. Banaji did not explain how he arrived at those limitations. (Tr. 20.) In addition, the ALJ stated Dr. Wilkins' opinion of "mildly impaired" was based on a thorough examination and numerous test results. (Tr. 21.)  The ALJ's treatment of Drs. Banaji and Wilkins are examples of his analysis of the objective

5

medical evidence. Because the Court finds no error in the ALJ's determination of Plaintiff's RFC, her first argument is without merit.

**The ALJ's Credibility Analysis:** The ALJ determined that Plaintiff was "not entirely credible," citing the following factors: the absence of objective medical evidence; the absence of surgery; the presence of only conservative treatment; the absence of assistive devices or TENS unit; no decreased range of motion; medications which control the depression and anxiety; no problems noted with interacting with authority figures; the limited prescription medications taken by the plaintiff; the lack of side effects from the medications; and the absence of physician-imposed restrictions which would preclude substantial gainful activity. (Tr. 21-22.)

According to Plaintiff, the ALJ incorrectly evaluated the medical evidence and failed to discuss her daily activities and her work record. The Court has already addressed the ALJ's consideration of the medical evidence, and found no error. The medical evidence, particularly the absence of physician-imposed restrictions during the relevant time period, is consistent with the ALJ's credibility analysis. While the ALJ did not discuss Plaintiff's daily activities and her work record in making his credibility determination, the omission of these factors is not fatal to the credibility analysis. The ALJ set forth the relevant factors from *Polaski v. Heckler*, 739 F.3d 1320 (8th Cir. 1984), and indicated that he considered all of the *Polaski* factors, as well

6

as the factors set forth in the regulations and cited Social Security rulings, in reaching his credibility decision. The ALJ was not required to discuss each and every *Polaski* factor when he identified the pertinent factors and offers valid reasons for his ruling. *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011.)  Thus, the Court concludes that the ALJ's credibility determination is supported by substantial evidence.

**The ALJ's Assessment of Plaintiff's Mental Limitations:** The ALJ found that Plaintiff had the severe impairment of social anxiety, with depression. (Tr. 14.) According to Plaintiff, her GAF score of 48 (as determined by Dr. Gilchrist) required the ALJ to find her more limited and unable to perform work based upon her mental limitations.

The ALJ specifically addressed Plaintiff's GAF score of 48[3] in his written decision, noting GAF scores to reveal "only a picture in time and do not necessarily correlate with disability." (Tr. 23.)  It is significant that the score was a one time assessment made during a single consultative examination. The score was not one of many low scores assigned over several evaluations. *See Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) (ALJ erred by failing to consider claimant's numerous GAF scores below fifty, some of which were as low as ten). More importantly, however, Plaintiff's GAF score of 48 was *not* consistent with Dr. Gilchrist's other observations. For

---

[3] In addition to assessing Plaintiff's GAF to be 48, Dr. Gilchrist found her highest GAF in the past year to be 52. (Tr. 350.)

example, Dr. Gilchrist found Plaintiff was able to communicate well, although "very emotional and flooded," able to stay on task, able to complete tasks in a timely fashion, and able to manage funds on her own. (Tr. 350-51.) According to the medical records, on occasion Plaintiff ran out of her medication (Prozac) and experienced problems, suggesting her symptoms were better when compliant with her prescribed course of treatment. (Tr. 344, 408.) Finally, the ALJ's RFC determination accounted for her mental limitations, specifying that her work must be unskilled, with an ability to perform simple, routine, repetitive tasks in a setting where interpersonal contact is incidental to the work performed and the supervision required is simple, direct, and concrete. Thus, the Court concludes that the ALJ did not err in his assessment of Plaintiff's mental limitations.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *E.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this 24th day of June, 2015.

_____
UNITED STATES MAGISTRATE JUDGE